IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PATTI A. STOVER, )
 )
        Plaintiff, )
 )
v. ) CASE NO. CIV-05-272-FHS
 )
JO ANNE B. BARNHART, )
Commissioner, Social Security )
Administration, )
 )
        Defendant. )

## FINDINGS AND RECOMMENDATIONS

Claimant, Patti A. Stover, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED AND REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy..." Id.

§423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01.

## Claimant's Background

---

[1] Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Claimant was born on March 4, 1956, and was 48 years old at the time of the hearing. She has a high school education and some vocational education. Claimant previously worked as a certified nurse aide and certified home health aide. Claimant initially amended her alleged onset date to October 13, 2002, stating that she worked until October 12, 2002. She alleges an inability to work due to depression, anxiety, obesity, impaired vision, chondromalacia and arthritis of the left knee, and arthritis of the lower back and left ankle.

**Procedural History**

On January 27, 2003, Claimant first applied for disability benefits under Title II ( 42 U.S.C. § 401, et seq.) and Supplemental Security Income (42 U.S.C. § 1381, et seq.). Claimant's application for benefits was denied in its entirety initially and on reconsideration. ALJ Michael A. Kirkpatrick conducted a hearing on Claimant's application on July 27, 2004 in McAlester, Oklahoma. By decision dated December 15, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On April 29, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined Claimant retained the residual functional capacity (RFC) to perform work that exists in significant numbers in the national and regional economies.

## Review

Claimant identifies three errors in the ALJ's decision: (1) the ALJ failed to properly evaluate the I.Q. findings from Dr. Gordon; (2) the ALJ ignored significant and probative evidence; and (3) the ALJ's failure to find severe mental impairments and include those impairments in the RFC determination is not supported by substantial evidence.

A psychological evaluation was performed by Dr. Minor W. Gordon on September 11, 2003. On the Wechsler Adult Intelligence Scale Revised, Claimant earned a verbal I.Q. score of 68, a performance I.Q. of 72, and a resultant full scale I.Q. of 68. Her subtest scores were as follows: Information 5, Digit Span 4, Vocabulary 5, Arithmetic 4, Comprehension 3, Similarities 2, Picture Completion 4, Block Design 3, Object Assembly 1, and Digit Symbol 6. Based on the testing results, Dr. Gordon opined Claimant's level of intelligence was in the mild range of mental retardation. On the Wide Range Achievement Test Revised, Claimant was found to have the grade equivalence of the end of seventh grade in reading and spelling while she was at the beginning of fifth grade in arithmetic. On the Beck Anxiety Inventory, Claimant was found to be suffering for a moderate level of anxiety. The Beck Depression Inventory showed Claimant to be suffering from a moderate to severe level of depression. Claimant was diagnosed with major depression; severe without psychotic symptoms, generalized anxiety disorder, moderate; mental retardation, mild; problems with her right knee and ankle as well as allergies; and social-adaptive behavior in keeping with low level of intellectual functioning. Her Global Assessment of Functioning (GAF) was 51. (Tr. 272-275)

Relying on the report submitted by the state agency physician, the ALJ determined Claimant did not have a severe mental impairment. He found the I.Q. testing scores were not

consistent with Claimant's activities of daily living, social functioning, and work history noting that she had graduated from high school and vocational school. The ALJ stated that Claimant's prior work at semi-skilled jobs of CNA and HHA made it "hard to swallow an argument that she doesn't have the intellectual ability to work." Claimant's testimony at the hearing was that she was unable to work because of physical limitations, not mental symptoms. A supplemental interview questionnaire showed rather full and normal activities of daily living and social functioning. Additionally, the ALJ found evidence in the record of a rather normal mental status examination. (Tr. 19)

Step two of the sequential analysis requires a determination of whether a claimant's alleged impairment(s) are "severe." 20 C.F.R. § 404.1520(a),(4)(ii),(c); 416.920(a)(4)(ii),(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. 404.1521(a); 416.921(a). Only "slight" impairments, imposing only a "minimal effect on an individual's ability to work are considered not severe":

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made [at step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age education, or work experience were specifically considered.

Soc. Sec. R. 85-88.

In light of these definitions, case law requires a very limited role for step two analysis. Step two is designed to eliminate from consideration at the early stages of the administrative process those individuals who could not possibly meet the statutory definition of disability. Bowen v. Yuckert, 482 U.S. 137, 156 (1987). While "the mere presence of a condition or ailment" is insufficient to move past step two, a claimant is required only to make a "de minimus" showing of impairment to proceed on to the further steps in the analysis. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

Here, the ALJ relied heavily on the state agency physician to reach his conclusions. These opinions are considered to be of dubious value, when not accompanied by "thorough written reports or testimony." Hamlin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)(quotations omitted). An ALJ is bound by the opinion of agency medical consultants only insofar as they are supported by the evidence in the record. Soc. Sec. R. 96-6P, 1996 WL 374180, at 2. Because the ALJ heavily relies on this opinion for his conclusions, the opinion must find adequate support in the medical record.

Claimant was evaluated by Dr. Kathie Ward on April 30, 2003. She diagnosed Adjustment Disorder with mixed anxiety and depressed mood. Her GAF was determined to be 60. (Tr.143-145)

The GAF is a subjective determination based on a scale of 100 to 1 of the clinicians' judgement of an individual's overall level of functioning. Langley v. Barnhart, 373 F.3d at 1122 (quotation omitted). The DSM-IV-TR explains that a GAF score between indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or

co-workers).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment.  The Tenth Circuit, through a series of unpublished decisions, has make it clear that the failure to discuss a GAF score alone is insufficient to reverse an ALJ's determination of non-disability.  See, <u>Lee v. Barnhart</u>, 2004 WL 2810224, 3 (10th Cir. (Okla.)); <u>Eden v. Barnhart</u>, 2004 WL 2051382, 2 (10th Cir. (Okla.)); <u>Lopez v. Barnhart</u>, 2003 WL 2231956, 2 (10th Cir. (N.M.)).  The foundation for this statement is the possibility that the resulting impairment may relate to the claimant's social rather than occupational sphere.  <u>Lee</u>, supra at 3.  However, a GAF of 60 or less does suggest, at least, a moderate difficulty in keeping a job. Here, these GAF scores consistently demonstrate mental impairments imposing more that a minimal effect on the Claimant's ability to work.  The ALJ's reliance on the state agency physician to support his determination Claimant did not have severe mental impairments is inconsistent with the evidence in the record.  The ALJ's conclusion is not supported by substantial evidence.

The ALJ also rejected Dr. Gordon's I.Q. testing results finding that they were not consistent with Claimant's activities of daily living.  On remand, the ALJ is directed to explain his rejection of these assessments beyond the cursory dismissal contained within his opinion.  The ALJ's rejection of the I.Q. testing scores is not supported by substantial evidence.

Claimant also contends that the ALJ erred by failing to include severe mental limitations in his residual functional capacity (RFC) assessment.  RFC is defined by the Social Security Regulations as what a claimant is capable of doing despite his mental and physical limitations.

Davidson v. Secretary of Health & Human Services, 912 F.2d 1246, 1253 (10th Cir. 1990); See also: 20 C.F.R. § 404.1545(a). As previously discussed, the ALJ's failure to find severe mental impairments is not supported by substantial evidence. As a consequence, the ALJ's omission of severe mental impairments in his RFC determination constituted error.

## Conclusion

The Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED AND REMANDED for further administrative proceedings as set forth herein. Parties are herewith given ten (10) days from the date of this service to file with the Clerk of the court any objections with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 16th day of June, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE